Robert H. Rexrode
California Bar No. 230024
Law Offices of Robert H. Rexrode
3911 Cleveland Ave., No. 34040
San Diego, Ca. 92101
(619) 630-4435
robert_rexrode@rexrodelawoffices.com

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(HONORABLE WESLEY L. HSU)

| UNITED STATES OF AMERICA, | Case No.: 24cr00570-17-WLH |
|---|---|
| Plaintiff, | Date: June 13, 2025 |
| vs. | Time: 9:00 a.m. |
| JULIE ANN ROMERO (17), | OBJECTION TO PRE-SENTENCE REPORT |
| Defendant | |

**I.      Introduction**

In its Pre-Sentence Report (PSR) for this case, the Probation Officer calculates Ms. Romero as being in a Criminal History Category (CHC) III. This is the result of the Probation Officer "scoring," for purposes of criminal history points, a 2006 conviction. For the reasons below, this is an error. This 2006 conviction does not "score" under the advisory guidelines. Ms. Romero is consequently in a CHC II.

//

**II.     Ms. Romero's 2006 conviction does not result in criminal history points**

The Probation Officer assigns three criminal history points due to Ms. Romero having suffered a conviction in 2006. PSR at 20 ¶ 150. Given when this prior conviction occurred, and given the crime to which Ms. Romero pleaded guilty, this 2006 conviction does not "score" under the advisory guidelines.

The advisory guidelines detail when a defendant's prior conviction should "count' for guideline purposes. Relevant here:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

USSG § 4A1.2 (e)(1) (Nov. 2024). Ms. Romero's 2006 conviction was imposed more than fifteen years before she committed the instant offense, and she was not incarcerated for this 2006 conviction within fifteen years of committing the instant offense. It thus does not score.

On September 1, 2006, Ms. Romero committed the offense of writing bad checks. PSR at 20 ¶ 150. She pleaded guilty to that offense on February 26, 2007, and was sentenced to four years in prison. *Id*. Ms. Romero served her time and was released on December 23, 2008. *Id*. Thus, for purposes of the guidelines, this

2006 conviction would "count" only if Ms. Romero committed the instant offense with fifteen years from December 23, 2008. She did not.

Ms. Romero pleaded guilty to Count 60 of the Indictment. PSR at 5 ¶ 1. Count 60 charged Ms. Romero with the substantive crime, with an additional aiding and abetting theory of liability, of possession of a controlled substance with the intent to distribute, in violation of 21 U.S.C. § 841 (a)(1) and 18 U.S.C. § 2(a). PSR at 5 ¶ 2. This offense took place on March 13, 2024. *Id*.

On March 13, 2024, more than fifteen years had passed from when Ms. Romero was released from custody for her 2006 conviction.[1] Because Ms. Romero's instant offense occurred more than fifteen years after her sentencing and release from custody from her 2006 state-court conviction, that conviction does not "count" for purposes of the sentencing guidelines. USSG § 4A1.2 (e)(1). If was thus an error to assign three criminal history points for this 2006 conviction. PSR at 20 ¶ 150.

Nor does the existence of conspiracy allegations against Ms. Romero alter this analysis. This should end the matter as to what date should be used to calculate Ms. Romero's criminal history for purposes of the guidelines.

---

[1] About15 years and 8 months. (operative dates being March 13, 2024, and December 23, 2008).

Ms. Romero did not plead guilty to a conspiracy count. Ms. Romero pleaded guilty to a substantive count of possession of a controlled substance with intent to distribute that took place on March 13, 2024. PSR at 5 ¶ 2. And as the Probation Officer correctly notes, Ms. "Romero's relevant conduct includes a total amount of [approximately 4] kilograms of fentanyl." PSR at 13 ¶ 115. This total amount of narcotics attributable to Ms. Romero is the total amount of narcotics possessed by Ms. Romero on May 13, 2024, which formed the factual basis for the count to which Mr. Romero pleaded guilty—Count 60. *Id*.

Although the PSR does list allegations from a *conspiracy charge* of the instant indictment that purportedly involve Ms. Romero that predate March 13, 2024, those allegations are just that—allegations. PSR at 11 ¶¶99-103. And of those five allegations that predate March 13, 2024, only three fall within fifteen years of Ms. Romero's release from custody from her 2006 conviction—PSR at 11 ¶¶ 99-101.[2]

---

[2] The two allegations that occurred more than fifteen years from Ms. Romero's release from custody, but before March 14, 2024, both involve allegations that Ms. Romero was a participant in phone calls in which news concerning non-drug matters. PSR at 11 ¶¶102-103. These phone calls involve "coded language." *Id*. The summaries contained in the PSR are therefore not actual summaries of the phone calls themselves, but rather law enforcement's characterization of those calls.

These three allegations are by no means relevant conduct of Ms. Romero's count of conviction. Sentencing courts must consider the similarities, regularity, and temporal proximately of alleged relevant conduct. *United States v. Hahn*, 960 F.2d 903, 910-11 (9th Cir. 1992). "Each conspirator is responsible only for the activities that fell within the scope of his particular agreement with the conspirators, and reasonably foreseeable behavior in furtherance of that particular agreement." *United States v. Riley*, 335 F.3d 919, 928 (9th Cir. 2003). Here there is certainly no evidence that would prove by a preponderance of the evidence that these allegations are relevant conduct. *See United States v. Navarro*, 979 F.2d 786, 789 (9th Cir. 1992).

The allegations contained in the conspiracy charge against Ms. Romero here all involve telephone calls in which "coded language" is used. PSR at 11 ¶¶ 99-101. These phone calls involve "coded language." *Id*. The summaries contained in the PSR are therefore not actual summaries of the phone calls themselves, but rather law enforcement's characterization of those calls.

The first allegation involves Ms. Romero purportedly purchasing $120 worth of drugs. PSR at 11 ¶ 99. This is unsurprising. Ms. Romero has a long history of drug use and was using drugs during this time. PSR at 26 ¶¶ 190-197. There is nothing to indicate this small drug transaction was anything other than Ms. Romero buying drugs for herself. Significantly, $120 worth of drugs purchased by

Ms. Romero for her own use is completely dissimilar to the larger amount of narcotics involved in the offense to which Ms. Romero pleaded guilty.

The second two allegations concern phone calls that took place on November 6, 2023. PSR at 11 ¶¶ 100-101. They involve Ms. Romero passing on money to a person at the request of a co-defendant. *Id.* The summaries of these phone calls in the PSR bear no resemblance to actual phone calls themselves. Ms. Romero did not at the time know for certain that the money involved was the proceeds of drugs. She certainly lacked, at the time, the specific intention to join and facilitate a larger drug conspiracy.

As compared to Ms. Romero's actions on March 13, 2024, when she knowingly carried drugs for another person, these three conspiracy allegations are dissimilar. They took place months before Ms. Romero agreed to transport drugs on March 14, 2024. There is no sign of regular, concerted action on Ms. Romero's part that would warrant attributing Ms. Romero's conduct on March 14, 2024, to a larger conspiracy. *See Hahn*, 960 F.2d at 910-11.

At the end of the day, Ms. Romero pleaded guilty to a substantive count of possession with intent to distribute. The Probation Officer bases Ms. Romero's Base Offense Level (BOL) on the drugs involved in that substantive charge. PSR at 13 ¶ 115. Ms. Romero did not plead guilty to a conspiracy charge. And her BOL can not be based on allegations made in an unproven conspiracy charge. *Id*.

Nor should the time-period in which Ms. Romero's criminal history points are calculated expand to this time-period of these unproven allegations. She should be sentenced based on her admitted actions. She will be sentenced severely enough for those. Reaching out to unproven, unrelated allegations to calculate Ms. Romero's sentencing guidelines will both increase her sentencing range and deprive this Court of the power to sentence her below a ten-year minimum mandatory sentence. The Court should sustain Ms. Romero's objections.

### III. Conclusion

Ms. Romero's 2006 conviction does not "count" for purposes of the guidelines. It was therefore an error to assign Ms. Romero 3 criminal history points for this conviction. PSR at 20 ¶ 150. Correctly calculated, Ms. Romero has a total of 2 criminal history points instead of the 5 points assigned to her by the probation officer. PSR at 21 ¶ 153. This, in turn, drops Ms. Romero's Criminal History Category from III to II. USSG, Chapt. A., Pt.1, Sentencing Table. Ms. Romero requests the Court amend the PSR accordingly.

Date: May 27, 2025

/s *Robert H. Rexrode*
Robert H. Rexrode